# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

DAMIEN FORD                                                                                           PLAINTIFF
ADC #143035

v.                                           5:17cv00270-JM-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction; *et al.*                                                 DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>  Clerk, United States District Court
>  Eastern District of Arkansas
>  600 West Capitol Avenue, Suite A149
>  Little Rock, AR 72201-3325

## **DISPOSITION**

**I.      INTRODUCTION**

Damien Ford ("Plaintiff") was an inmate at the Varner Supermax Unit of the Arkansas Department of Correction ("ADC") at the time he filed this action *pro se* and pursuant to 42 U.S.C. § 1983. (Doc. Nos. 2, 11.) He alleges Defendants, ADC and Varner Supermax officials, violated his First, Fifth, Eighth, and Fourteenth Amendment rights by subjecting him to excessive confinement in punitive isolation and by denying him access to media and his personal property during forty-eight-hour "relief periods" in between successive thirty-day terms in punitive isolation.[1] (Doc. No. 11 at 4, 9-13.) Plaintiff seeks compensatory and punitive damages as well as injunctive relief. (*Id*. at 13-14.)

---

[1] Additional claims stated in Plaintiff's Amended Complaint were previously dismissed without prejudice. (Doc. Nos. 66, 91, 103.)

The remaining Defendants are Wendy Kelley, James Gibson, McHan,[2] Cashion,[3] Claudia Harris, Stephens,[4] Brown,[5] James Plummer, F. Washington,[6] Michael Demery, Spencer,[7] Evans,[8] and Felicia Piggee. They have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. Nos. 126-128, 147.) Plaintiff has responded (Doc. Nos. 138, 139). Plaintiff also filed a Motion for Summary Judgment. (Doc. Nos. 140-142.) Defendants have responded. (Doc. Nos. 145, 146). This matter is now ripe for a decision. After careful review, and for the following reasons, I find Plaintiff's Motion for Summary Judgment should be DENIED. Defendant's Motion for Summary Judgment should be GRANTED and Plaintiff's claims should be DISMISSED with prejudice.

## II.   FACTS

It is undisputed that Plaintiff spent a significant amount of time in punitive isolation due to repeated rule violations. (Doc. No. 128 at 4; 126-6.) According to Plaintiff's Amended Complaint, he was denied adequate forty-eight-hour relief in between consecutive thirty-day periods in punitive isolation. (Doc. No. 11 at 4, 9-10.) Specifically, he was not moved from his punitive isolation cell during his forty-eight-hour relief periods and was not afforded access to newspapers

---

[2] This Defendant's name is Tony McHan. (Doc. No. 68 at 1.) The Clerk is directed to amend the docket to reflect his full name.
[3] This Defendant's name is Mark Cashion. (Doc. No. 30 at 1.) The Clerk is directed to amend the docket to reflect his full name.
[4] This Defendant's name is Mark Stevens. (Doc. No. 30 at 1.) The Clerk is directed to amend the docket to reflect his full name.
[5] This Defendant's name is Rodney Brown. (Doc. No. 30 at 1.) The Clerk is directed to amend the docket to reflect his full name.
[6] This Defendant's name is Flora Washington. (Doc. No. 30 at 1.) The Clerk is directed to amend the docket to reflect her full name.
[7] This Defendant's name is Tonda Spencer. (Doc. No. 30 at 1.) The Clerk is directed to amend the docket to reflect her full name.
[8] This Defendant's name is Gladys Evans. (Doc. No. 30 at 1.) The Clerk is directed to amend the docket to reflect her full name.

and other media and his personal property during those times. (*Id*.) Plaintiff alleges he suffered "sleep deprivation, humiliation, and mental and biological deterioration." (*Id*. at 11.) He seeks an injunction requiring Defendants to "obey the constitutional limitation of 30 days confinement in punitive isolation," as well as compensatory and punitive damages. (*Id*. at 13.)

### III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

IV.    **ANALYSIS**

    A.    **Official Capacity Claims**

Plaintiff has sued Defendants in both their official and personal capacities. (Doc. No. 11 at 2.) His official capacity claims for money damages are barred pursuant to the doctrine of sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity). Accordingly, I recommend Plaintiff's official capacity claims against Defendants for money damages be dismissed. To the extent Plaintiff seeks injunctive relief against Defendants in their personal capacities, those claims should be dismissed on the basis that Plaintiff has failed to establish a constitutional violation, as discussed below. Further, Plaintiff is now housed in the Maximum Security Unit of the ADC, so his request for injunctive relief regarding conditions at the Varner Unit is moot. *Owens v. Isaac*, 487 F.3d 561, 564 (8th Cir. 2007).

    B.    **Personal Capacity Claims**

Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 127 at 4.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are

appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id*. Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

The parties agree that Plaintiff is entitled to a forty-eight-hour relief period in between successive thirty-day periods in punitive isolation. Defendants submitted Administrative Directive 16-20, the ADC's policy on punitive segregation and restriction that became effective in June 2016. (Doc. No. 126-2.) According to the Directive, inmates may be confined to punitive segregation "for a period up to thirty (30) days." (*Id*. at 7.) Additionally,

> Inmates serving consecutive punitive isolation sentences will receive a forty-eight (48) hour relief at the end of each thirty (30) day sentence. Inmate privileges as previously outlined in this policy will be restored during the forty-eight (48) hour relief period and will be restricted again at the beginning of the next punitive sentence.

(*Id*. at 8.)  The Varner Unit's policy on punitive segregation, VU 10.2.0, contains identical language.  (Doc. No. 126-3 at 8.)  The crux of Plaintiff's argument is that certain privileges were not fully restored to him during forty-eight-hour relief periods.

1.  **Removal from Cell**

Plaintiff alleges adequate forty-eight hour relief includes being removed from the punitive isolation cell during the relief period before being returned to the cell for the start of the next punitive sentence.  (Doc. No. 11 at 9-11.)  He contends Defendants acted with deliberate indifference in subjecting him to "excessive confinement," in violation of his First, Fifth, Eighth and Fourteenth Amendment rights.  (*Id*. at 13-14.)

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the "minimal civilized measure of life's necessities."  *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342 (1981)).  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner.  *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1977)).  To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety.  *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

Defendants assert that Plaintiff cannot prove he was deprived of the minimum civilized measures of life's necessities while confined in punitive segregation.  (Doc. No. 127 at 9.)  Plaintiff summarily concludes the failure to remove him from the cell during relief periods resulted in cruel and unusual punishment.  However, neither the Constitution nor ADC policy requires that an

inmate be moved from one cell to another during a relief period. Both Administrative Directive 16-20 and VU 10.2.0 describe forty-eight-hour relief as a period in which "[i]nmate privileges . . . will be restored." (Doc. No. 126-2 at 8; Doc. No. 126-3 at 7.) Neither provides for the removal of an inmate from his cell during the relief period. Defendant Washington, who is the Classification Officer for the ADC, affirms in her Declaration that ADC policy does not require removal from a punitive isolation cell during relief periods. (Doc. No. 126-4 at 2.) Thus, although an inmate may be moved to a different cell during a relief period, it is not required by ADC policy. And Plaintiff has not pointed to any reason why it would be constitutionally required.

Plaintiff bases his belief that he should have been transferred into a different cell during the relief period on *Finney v. Hutto*, 410 F. Supp. 251, 278 (E.D. Ark. 1976), *aff'd*, 548 F.2d 740 (8th Cir. 1977), *aff'd*, 437 U.S. 678 (1978), which held that "the policy of sentencing inmates to indeterminate periods of confinement in punitive isolation is unreasonable and unconstitutional." (Doc. No. 126-5 at 8.) The district court in *Finney v. Hutto* found that, under the conditions that existed in Arkansas prisons at the time, "a maximum sentence of thirty days is permissible."[9] *Id*. Plaintiff interprets this to mean he must be removed from his punitive isolation cell after thirty days. But his argument ignores the fact that an inmate on forty-eight-hour relief is not subject to punitive conditions; that he remains in the same cell does not mean he remains in punitive confinement. Plaintiff has not identified any difference between punitive isolation cells and

---

[9] I note this limitation was based largely on the Court's finding that conditions in punitive isolation were unconstitutional. Indeed, in affirming the district court's imposition of a time limit, the United States Supreme Court noted it was "abundantly clear that the length of isolation sentences was not considered in a vacuum." 437 U.S. at 685. Instead, "[t]he length of time each inmate spent in isolation was simply one consideration among many," and the time limit "might well have been unnecessary" had earlier orders to remedy conditions been heeded. *Id*. at 687.

general population cells that would make his continued confinement in a punitive isolation cell unconstitutional.

Plaintiff has not demonstrated the failure to remove him from his punitive isolation cell during forty-eight-hour relief periods deprived him of the minimal civilized measure of life's necessities or constituted an excessive risk to his health or safety. Therefore, he has failed to establish an Eighth Amendment violation.

To the extent Plaintiff alleges the failure to remove him from his punitive isolation cell during relief periods also constituted a Fourteenth Amendment violation, he is mistaken. The United States Supreme Court has recognized that states may, under certain circumstances, create liberty interests which are protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (citing *Board of Pardons v. Allen*, 482 U.S. 369 (1987)). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (internal citations omitted). Because ADC policy does not require the removal of an inmate from a punitive isolation cell during relief periods, it cannot be said that the state has created a liberty interest in removal. Even if it had, the failure to move an inmate to another cell could not be considered "a dramatic departure from the basic conditions" of confinement. *Id*. at 485. Because forty-eight-hour relief entails the restoration of privileges, it is the very definition of the "basic conditions" of confinement.

Plaintiff has not established his constitutional rights were violated by the failure to move him to a different cell during relief periods. Therefore, Defendants are entitled to qualified immunity on this claim.

### 2. Access to News and Media

Plaintiff alleges he was denied access to news and media during periods of forty-eight-hour relief, violating his First Amendment rights. (Doc. No. 11 at 4, 9-11.) Prison regulations alleged to infringe on First Amendment rights are to be judged under a "reasonableness" test. *Turner v. Safley*, 482 U.S. 78, 89 (1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. There are four factors to be considered in making this determination: (1) whether there is a "valid rational connection" between the prison regulation and the government interest justifying it; (2) whether there is an alternative means available to the prisoner to exercise the right; (3) whether an accommodation would have "a significant 'ripple effect'" on the guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982-83 (8th Cir. 2004) (quoting *Turner*, 482 U.S. at 89-91).

Defendants contend Plaintiff was afforded access to news and media during his relief periods pursuant to ADC policy. Administrative Directive 16-20 and VU 10.2.0 both state inmates are not allowed to receive newspapers or magazines in punitive segregation. (Doc. No. 126-2 at 2; Doc. No. 126-3 at 2.) However, "[d]uring their forty-eight (48) hour relief, inmates will be allowed to receive the two (2) most current newspapers and magazines on a one-for-one exchange basis." (*Id*.; Doc. No. 147-4 at 2-3.) According to Defendant Washington's Declaration, inmates on forty-eight-hour relief "may receive a copy of any newspapers or magazines to which they subscribe" and "inmates who subscribe to newspapers are entitled to the two most recent editions of that publication on a one-for-one basis." (Doc. No. 126-4 at 3.) If an inmate does not subscribe or his family does not provide a newspaper, an inmate may request a copy from the prison library.

10

(Doc. No. 147-4 at 2-3.)  To request a newspaper, an inmate must mark a box on a 48-hour relief form.  (Doc. No. 147-2 at 1; Doc. No. 147-4 at 3.)   If the newspaper is available, the inmate receives the edition; if the paper is not available, the inmate receives no paper.  (Doc. No. 147-2 at 1; Doc. No. 147-4 at 3.)

Accordingly, pursuant to ADC policy, Plaintiff was entitled to access news during relief periods by receiving newspapers or magazines his family had provided, purchasing them himself, or requesting them from the library.  However, he did not take advantage of any of these methods.  Plaintiff does not allege any newspapers or magazines provided by his family or purchased by him were ever withheld from him during a relief period.  Further, he did not subscribe to any newspaper or magazine during the relevant period.  (Doc. No. 126-5 at 9-10.)  He recalls asking someone, perhaps Defendant Brown, verbally for a newspaper, but Plaintiff cannot recall if he ever made a written request.  (*Id*. at 11.)  ADC policy requires a written request.  (Doc. No. 147-2 at 1.)  Plaintiff could have requested copies of the newspaper from the library.  Moreover, although prisoners have a First Amendment right to receive published materials subject to reasonable limitations, that right does not create an affirmative duty on prisons to provide news publications to inmates.  *Collins v. Burl*, No. 2:11CV40-DPM-BD, 2011 WL 2457532, at 1 (E.D. Ark. June 17, 2011) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  And, Plaintiff had other means of accessing news during relief periods, including by receiving visitors, receiving mail, and calling friends and family.  (Doc. No. 126-2 at 2; Doc. No. 126-4 at 3.)  Mail is not restricted for punitive inmates, even during their punitive sentences.  (Doc. No. 126-2 at 2.)

Clearly, the ADC's policy governing access to news and media during relief periods is reasonably related to a legitimate penological interest:  the incentivization of better behavior.  The policy offers inmates several alternatives to exercise their right to receive published materials.

Plaintiff's failure to avail himself of any of those alternatives does not amount to a constitutional violation. Defendants are entitled to qualified immunity on this claim.

### 3. Access to Personal Property

Plaintiff alleges he was denied access to his personal property during relief periods. (Doc. No. 11 at 9-10.) He specifically mentions "legal and religious books" and says the withholding of these items during relief periods violated his First and Fifth Amendment rights. (*Id*. at 11-12.)

Plaintiff has not shown he was prevented from accessing his personal property during relief periods. Pursuant to Administrative Directive 16-20 and VU 10.2.0, inmates are not allowed to have personal property while on punitive segregation, although they may have certain enumerated items. (Doc. No. 126-2 at 3-4, 8.) Those items include legal material "which can be kept neat and orderly and does not clutter the cell" and one religious text, along with soap, dental hygiene items, a washcloth, certain self-improvement reading materials, a comb, deodorant, paper, flex pens, envelopes, and medications. (*Id*. at 3-4.) Additionally, inmates in punitive segregation are allowed to purchase legal supplies, flex pens, and paper through the commissary. (*Id*. at 3-4, 8.) They are also allowed to order legal materials from the law library, and those items will be made "readily accessible" to those inmates who need to meet court deadlines. (*Id*. at 3-4.) Thus, ADC policy allowed Plaintiff to have certain personal property items – including legal and religious materials, the very items he claims he was denied – during his confinement in punitive isolation *as well as* during relief periods. According to the policy, those enumerated "personal property privileges" remain in effect during forty-eight-hour relief, while other privileges are restored. (*Id*. at 8.)

The record demonstrates Plaintiff was, in fact, afforded these privileges. For example, Plaintiff purchased goods from the commissary and made telephone calls while in punitive isolation. (Doc. No. 126-5 at 8.) There was no evidence Plaintiff's family called to schedule a

visit with him while he was on relief. (Doc. No. 11 at 102.) Further, Plaintiff believed that during relief an inmate was entitled to <u>all</u> of his personal property. (Doc. No. 11 at 102.) (Emphasis added.) Plaintiff clearly was in possession of some personal property, as he grieved "I have been denied the *rest* of my property . . . ." (Doc. No. 147-3 at 3.) (Emphasis added.) Plaintiff contends he was denied religious and legal texts. (Doc. No. 11 at 106.) The Chaplin's notes to Plaintiff establish that the facility did not have the books Plaintiff requested. (Doc. No. 147-7 at 1.) There is no evidence in the record that Plaintiff requested a Bible or Quaran, as those texts would have been noted by name in response to any request. (Doc. No. 147-6 at 2.) Plaintiff was in possession of five-to-six bags of legal documents; guards at the facility told him the materials were cluttering the cell when the documents were removed. (Doc. No. 147-5 at 2-3.) Inmates are allowed to keep legal material in their cell only to the extent they can do so in a neat and orderly manner. (Doc. No. 147-4 at 3.) There is no evidence Plaintiff was denied all of his legal material: he had the right to exchange documents in his possession for those in storage. (*Id*.) The record simply does not support Plaintiff's contention he was unlawfully denied access to his personal property, either during periods of punitive confinement or during relief periods, or that any denial of access violated his rights. Therefore, Defendants are entitled to qualified immunity on this claim, as well. Defendants' Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment Denied.

    **C.**     **State Law Claims**

Plaintiff also alleges the denial of adequate forty-eight-hour relief violated article 2, section 8 of the Arkansas Constitution, which he says places a duty on "police officers," under the due process clause, to "ensure safety and well-being of those in their custody." (Doc. No. 11 at 12.) Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction over

13

a related state law claim if it has dismissed all claims over which it has original jurisdiction. Because Plaintiff's § 1983 claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over his state law claims. *See Am. Civil Liberties Union v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (explaining that when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law as a matter of comity).

**V.      CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 126) be GRANTED.

2. Plaintiff's Motion for Summary Judgment (Doc. No. 140) be DENIED.

3. Plaintiff's cause of action (Doc. No. 11) be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations or the accompanying Judgment would not be taken in good faith.

DATED this 9th day of April 2019.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE